# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20334

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2018

Lyle W. Cayce
Clerk

VIACOM INTERNATIONAL, INCORPORATED,

Plaintiff–Appellee,

v.

IJR CAPITAL INVESTMENTS, L.L.C.,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Viacom International, Inc. (Viacom) sued IJR Capital Investments, L.L.C. (IJR) for infringing on its common law trademark of The Krusty Krab—a fictional restaurant in the popular "SpongeBob SquarePants" animated television series—after IJR took steps to open seafood restaurants using the same name. The district court granted summary judgment to Viacom on its trademark infringement and unfair competition claims. IJR appeals, asserting that Viacom does not have a valid trademark for The Krusty Krab and that its seafood restaurants would not create a likelihood of confusion between the two marks. We affirm the judgment of the district court.

No. 17-20334

## I

In 1999, Viacom launched the animated television series "SpongeBob SquarePants" on its Nickelodeon network.  The show revolves around SpongeBob SquarePants, a sea sponge that wears square shorts, lives in an underwater pineapple, and works at the fictional The Krusty Krab restaurant as a fry cook with an array of characters including a cranky co-worker and the owner of The Krusty Krab.  The show has become the most-watched animated television series for 15 consecutive years, with over 73 million viewers in the second quarter of 2016 alone.  While the audience is predominately comprised of children, one-third of all viewers are 18 or older.

The fast food restaurant The Krusty Krab played a prominent role in the pilot episode of the series and has appeared in 166 of 203 episodes.  The Krusty Krab was featured in two "SpongeBob SquarePants" feature films that grossed $470 million (and incurred $197 million in promotional expenses).  The Krusty Krab Restaurant is also an element of Viacom's mobile app "SpongeBob Moves In" (seven million global downloads), appears in a play called *The SpongeBob Musical*, and is frequently mentioned in the franchise's advertisements and online outreach (approximately seven million page views across platforms per week).  The press has referenced The Krusty Krab many times when discussing the show.

The Krusty Krab is also licensed to third parties for a variety of products. These licensed products include: licensed Krusty Krab playsets from Just Play, Mattel, The LEGO Company, and Mega Brands, Inc. ($1.4 million in royalties since 2009), the video game "SpongeBob SquarePants Creature from The Krusty Krab" (over one million units),  The Krusty Krab aquarium accessories (187,000 units), reusable franchise-themed stickers of The Krusty Krab, The Krusty Krab shirts sold at The SpongeBob Store at Universal Studios, Florida, and more.  Viacom has never attempted to license The Krusty Krab mark to a

restaurant.    However, Viacom's subsidiary company Paramount Pictures Corporation did license Bubba Gump Shrimp Co. for seafood restaurants based on the fictional business from the 1994 movie "Forrest Gump."

In 2014, IJR's owner, Javier Ramos, decided to open seafood restaurants in California and Texas.  Ramos asserts that he was describing the crusted glaze applied to cooked seafood when his friend Ivan Murillo suggested naming the restaurant Crusted Crab, which quickly became The Krusty Krab.  Both Murillo and Ramos deny having considered SpongeBob during this conversation, however Murillo has since stated that those who see the name may think of the restaurant from "SpongeBob SquarePants."  Also, an IJR investor mentioned SpongeBob "out of the blue" while discussing the restaurant.  Ramos said that he first became aware of the fictional restaurant from "SpongeBob SquarePants" when he performed a search using Google to determine if there were restaurants with a name similar to The Krusty Krab.

Because Ramos's search did not find an actual restaurant that used the mark, IJR filed a trademark application with the United States Patent and Trademark Office (USPTO) for THE KRUSTY KRAB.  Viacom had not previously registered The Krusty Krab mark.  The USPTO approved IJR's mark and published the application for opposition.  Viacom did not oppose at this time, and the USPTO issued a notice of allowance for the mark authorizing issuance once IJR filed a statement of use.

Beyond filing an intent-to-use trademark application, IJR also developed a business plan for potential investors in The Krusty Krab.  The business plan included a logo for the restaurant and described the eatery as a "Cajun seafood restaurant" that would sell shrimp, crawfish, and po-boys.  IJR intended to target families, singles, and students through print, radio, and online advertisements.  The business plan makes no reference to the SpongeBob franchise or the fictional restaurant The Krusty Krab.  IJR also purchased four

domain names for the restaurant concept, leased property in California, and procured restaurant equipment.

In November 2015, Viacom sent a cease-and-desist letter that demanded the withdrawal of IJR's trademark application and alleged infringement of The Krusty Krab mark.  IJR promptly responded, declining to cease use and asserting that Viacom does not actually use The Krusty Krab as a trademark and that there was no likelihood of consumer confusion.  However, IJR postponed opening any restaurants.  Viacom then filed suit in January 2016.

Viacom asserted nine claims against IJR including unfair competition under the Lanham Act and trademark infringement under Texas common law. The complaint included allegations that IJR's use of the mark in connection with restaurant services was likely to cause, or to have caused, confusion or mistake and to have deceived potential customers, causing them to believe that the services offered by IJR were affiliated with, sponsored by, or connected with Viacom; use of the mark would materially influence customers' purchasing decisions for restaurant services; and as a result, Viacom suffered and would continue to suffer damages to its goodwill and reputation.

Viacom commissioned a consumer survey and an expert report by Dr. Edward Blair.  The survey found that 30% of respondents thought The Krusty Krab was connected with Viacom and 35% of respondents associated the hypothetical restaurant with Viacom.  IJR filed a *Daubert* motion to exclude Dr. Blair's report and testimony—alleging it was flawed—and Viacom filed a motion for summary judgment on eight of its nine claims.

The court held a hearing on the motions and denied IJR's motion to exclude Dr. Blair's report.  The district court then granted, in part, Viacom's summary judgment motion on its common law trademark infringement and Lanham Act unfair competition claims.  The district court held that: Viacom established ownership of the mark through sales and licensing; Viacom

No. 17-20334

demonstrated that The Krusty Krab has acquired distinctiveness; and every likelihood-of-confusion factor indicated IJR's proposed use would probably cause confusion. Viacom then requested that the district court dismiss its other seven claims with prejudice and enter final judgment. The district court did so, and IJR appealed.

## II

A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim.[1] For Viacom to prevail on these claims, it must show (1) that it owns a legally protectable mark in The Krusty Krab and (2) that IJR's use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship.[2]

IJR contends that the district court erred in granting summary judgment for Viacom. We review *de novo* a district court's grant of summary judgment.[3] IJR specifically asserts that there are genuine issues of material fact as to whether Viacom owns a legally protectable mark and whether there is a likelihood of confusion between the two The Krusty Krab marks.

---

[1] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) ("The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." (citing *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied))); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 779, 806 n.3 (Tex. App.—Austin 2011, pet. denied))).

[2] *See, e.g.*, 15 U.S.C. § 1125(a)(1)(A); *Streamline*, 851 F.3d at 450; *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

[3] *Nola Spice Designs*, 783 F.3d at 536 (citing *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009)).

No. 17-20334

A trademark infringement action cannot be sustained unless the mark is legally protectable.[4]  While Viacom has never registered The Krusty Krab mark, the Supreme Court has held that the Lanham Act "protects qualifying unregistered marks."[5]  The Lanham Act provides that the term "trademark" includes "any word, name, symbol, or device, or any combination thereof" that is used or intended to be used "to identify and distinguish" one's goods "from those manufactured or sold by others."[6]  Viacom's mark is legally protectable if it establishes ownership by demonstrating that it uses The Krusty Krab as a source identifier.[7]  Often this court has bypassed the use inquiry and conducted only a distinctiveness analysis.[8]  However, the two issues are separate questions,[9] and because the use-as-a-source-indicator requirement is

---

[4] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) ("[T]he threshold requirement [is] that the plaintiff must possess a protectible mark, which must be satisfied before infringement can be actionable.").

[5] *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 267 (5th Cir. 1999) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

[6] 15 U.S.C. § 1127; *see also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 (1995) ("A trademark is a word . . . that is used in a manner that identifies those goods or services and distinguishes them from the goods or services of others.").

[7] *See Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265-66 (5th Cir. 1975) ("[T]he question of use adequate to establish appropriation remains one to be decided on the facts of each case, and that evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership." (quoting *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir. 1951))); *see also Nextel Commc'ns, Inc. v. Motorola, Inc.*, 91 U.S.P.Q.2d 1393, 1404 (T.T.A.B. 2009) (defining trademark as a word used "to indicate the source of the goods" (quoting 15 U.S.C. § 1127)).

[8] *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) (beginning the analysis of a trademark infringement claim for a registered mark with a distinctiveness inquiry); *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (same); *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (same for an unregistered mark).

[9] *See* 1 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 3.4 (5th ed. 2017) [hereinafter MCCARTHY] ("While the issue of use as a trademark is similar to the issues of inherent distinctiveness and secondary meaning, it is a separate question.").

No. 17-20334

at issue in this case Viacom must establish both use and distinctiveness.[10]  We first consider the use of The Krusty Krab mark.  Whether Viacom actually uses The Krusty Krab as a source identifier is a question of fact.[11]

### III

While registration of a mark is "prima facie evidence of . . . the registrant's ownership of the mark,"[12] ownership "is established by use, not by registration."[13]  An ownership right "accrues when goods bearing the mark are placed on the market."[14]  Viacom's mark clearly appears on goods in the market, such as The Krusty Krab playsets and aquarium ornaments.  The question in this case, however, is whether Viacom uses The Krusty Krab to indicate origin[15] because the purpose of trademark law is to "prevent[] competitors from copying 'a source-identifying mark.'"[16]

Before we assess whether Viacom uses The Krusty Krab as a source identifier, we address a threshold question:  Can specific elements from within a television show—as opposed to the title of the show itself—receive trademark protection?  We conclude that they can.  While this court has never explored this precise issue, we have affirmed a judgment against the junior use of Conan

---

[10] *See Nextel*, 91 U.S.P.Q.2d at 1407 (holding that a chirping sound could not acquire secondary meaning unless it was used as a trademark).

[11] *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 907 (5th Cir. 1995) (holding that there was no genuine dispute of material fact that a party had not used a phrase to identify its products); *cf. Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753-755 (6th Cir. 1998) (examining evidence on this question at the preliminary injunction stage).

[12] 15 U.S.C. § 1115(a).

[13] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).

[14] *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975); *see* U.S. PATENT AND TRADEMARK OFFICE, TRADEMARK MANUAL OF EXAMINING PROCEDURE § 901 (21th ed. 2017) [hereinafter TRADEMARK MAN. OF EXAM. PROC.].

[15] *See* 15 U.S.C. § 1127 (stating that a trademark "indicate[s] the source of the goods").

[16] *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163-64 (1995)).

the Barbarian—the title character of a comic book series—in a restaurant concept.[17]  This holding suggests that trademark protection may be granted to certain characters, places, and elements of a broader entertainment entity. Additionally, other courts have unequivocally extended this protection to fictional elements of entertainment franchises.  In *Warner Bros., Inc. v. Gay Toys, Inc.*,[18] the Second Circuit held that trademark protection may extend "to the specific ingredients of a successful T.V. series."[19]  The Second Circuit held in that case that the General Lee—an orange muscle car with a Confederate flag emblem that was "prominently featured" on the successful television series "The Dukes of Hazzard"—fell "within the ambit of Section 43(a)" of the Lanham Act.[20]  Subsequently, the Seventh Circuit also affirmed an injunction barring the junior user from making a model of the "General Lee."[21]  The underlying purposes of trademark are to protect goodwill and "to protect consumers against confusion and monopoly," and "to protect the investment of producers in their trade names to which goodwill may have accrued and which goodwill free-riders may attempt to appropriate by using the first producer's mark, or one that is deceptively similar."[22] Extending trademark protection to elements of television shows that serve as source identifiers can serve those purposes.

The success of "SpongeBob Square Pants" is not in dispute, but use within a popular television series does not necessarily mean that the mark is

---

[17] *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 148, 150 (5th Cir. 1985).

[18] 658 F.2d 76 (2d Cir. 1981).

[19] *Id.* at 78.

[20] *Id.* at 77-78.

[21] *See Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852 (7th Cir. 1982).

[22] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 843-44 (5th Cir. 1990).

used as a source identifier.[23]  "The salient question" is whether The Krusty Krab mark, "as used, will be recognized *in itself* as an indication of origin for the particular product or service."[24]  If the mark "creates a separate and distinct commercial impression . . . [it] performs the trademark function of identifying the source."[25]  In evaluating whether elements of a television series are trademarks, the focus is on the role that the element plays within the show and not the overall success or recognition of the show itself.  When an element only occasionally appears in a successful television series, the indication-of-origin requirement may not be met.[26]

For instance, in *Paramount Pictures Corp. v. Romulan Invasions*, Paramount (a subsidiary of Viacom) sought trademark protection on the Romulan mark, a fictional alien race in the "Star Trek" series.[27]  The Romulan mark was featured in television episodes, movies, books, licensed plastic spaceship models and dolls, puzzles, games, and more.[28]  The Trademark Trial and Appeal Board (T.T.A.B.) concluded that the mark was "only" used "from time to time" and held that Paramount "failed to establish any use of the term

---

[23] *See Paramount Pictures Corp. v. Romulan Invasions*, 7 U.S.P.Q.2d 1897, 1900 (T.T.A.B. 1988) (holding that the term Romulan from "Star Trek" does not fulfill "the requirement that a mark identify and distinguish the goods or services").

[24] *In re Morganroth*, 208 U.S.P.Q. 284, 287 (T.T.A.B. 1980) (emphasis added); *see also* 1 MCCARTHY § 3.4 ("The key question is whether, as actually used, the designation is likely to be recognized in and of itself as an indication of origin for this particular product or service." (citing *Textron Inc. v. Cardinal Eng'g Corp.*, 164 U.S.P.Q. 397, 399 (T.T.A.B. 1969))); TRADEMARK MAN. OF EXAM. PROC. § 1301.02 ("It is the perception of the ordinary customer that determines whether the asserted mark functions as a service mark, not the applicant's intent, hope, or expectation that it do so.").

[25] *In re Chem. Dynamics, Inc.*, 839 F.2d 1569, 1571 (Fed. Cir. 1988); *see also* 1 MCCARTHY § 3.4 (citing *The Procter & Gamble Co. v. Keystone Auto. Warehouse, Inc.*, 191 U.S.P.Q. 468, 474 (T.T.A.B. 1976)).

[26] *See Romulan Invasions*, 7 U.S.P.Q.2d at 1899.

[27] *Id.* at 1897.

[28] *Id.*

Romulan . . . as a mark to distinguish its services."[29]    Star Trek fans may vehemently disagree with this analysis as a factual matter.  However, we cite this decision to illustrate the conceptual aspects of the law in this area.

When an element plays a more central role in a franchise, trademark protection is ordinarily granted.  For example, the Southern District of New York held that the Daily Planet, the employer of Clark Kent in "Superman," was a common law trademark because "[t]he totality of evidence demonstrates that the Daily Planet has over the years become inextricably woven into the fabric of the Superman story."[30]  Twenty-five years later, the Southern District of New York also held that Kryptonite—a registered trademark—was a protectable ingredient of the broader "Superman" franchise because it is "a staple of the Superman character and story," the mark "is immediately recognized or associated with the character Superman," and it "identif[ies] the entertainment and other goods and services created, distributed and/or licensed by or on behalf of DC Comics."[31]  Likewise, the Second and Seventh Circuits granted trademark protection to the General Lee from "The Dukes of Hazzard" because of its critical role in the television series.[32]  The Fifth Circuit has upheld trademark protection for a cartoon character that was central to the comic strip.[33]

The Krusty Krab is analogous to protected marks like the Daily Planet, General Lee, and Conan the Barbarian.  The mark is integral to "SpongeBob SquarePants," as it appears in over 80% of episodes, plays a prominent role in

---

[29] *Id.* at 1899-1900.

[30] *DC Comics, Inc. v. Powers*, 465 F. Supp. 843, 847 (S.D.N.Y. 1978).

[31] *DC Comics v. Kryptonite Corp.*, 336 F. Supp.2d 324, 332 (S.D.N.Y. 2004).

[32] *See Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852 (7th Cir. 1982); *Warner Bros, Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981).

[33] *See Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985) (the cartoon Conan the Barbarian).

the SpongeBob films and musical, and is featured online, in video games, and on licensed merchandise. The Krusty Krab's central role in the multi-billion dollar SpongeBob franchise is strong evidence that it is recognized in itself as an indication of origin for Viacom's licensed goods and television services.

Viacom has extensively licensed The Krusty Krab mark. A "trade or service mark may be acquired through its use by controlled licensees."[34] Even if only the licensee uses the mark, "[o]wnership rights in a trademark or service mark can be acquired and maintained through the use of the mark by a controlled licensee."[35] The record verifies that The Krusty Krab appears on many consumer products including: reusable SpongeBob-themed stickers; multiple Krusty Krab playsets from brands like Lego; an aquarium ornament; a video game; and shirts, among other products. On most of those products, The Krusty Krab is featured prominently and contributes in identifying the good. This licensing regime has generated millions of dollars for Viacom and provides further evidence that Viacom uses The Krusty Krab as a source identifier and therefore owns the mark.

That the mark typically appears alongside the "SpongeBob SquarePants" trademark does not threaten its status as a trademark. Both the Federal Circuit and the T.T.A.B. have held that a "word mark does not lose its strength as a trademark when the manufacturer['s mark] is identified along with the branded product."[36] For example, Pop-Tarts received trademark protection even though the "primary or house mark 'KELLOGG' always appears on the labels, packages, and advertising material" because Pop-Tarts was "likely to create a commercial impression separate and apart from

---

[34] *Turner v. HMH Publ'g Co.*, 380 F.2d 224, 229 (5th Cir. 1967).

[35] 3 MCCARTHY § 18:46.

[36] *Bridgestone Ams. Tire Ops., LLC v. Fed. Corp.*, 673 F.3d 1330, 1336 (Fed. Cir. 2012); *Kellogg Co. v. Gen. Foods Corp.*, 166 U.S.P.Q. 281, 282-83 (T.T.A.B. 1970).

'KELLOGG.'"[37]    Likewise, The Krusty Krab creates a distinct commercial impression signifying to consumers that products like Krusty Krab playsets or aquarium ornaments originate from the famous fictional restaurant that employs their beloved sea sponge character.    The primary "SpongeBob SquarePants" mark does not hinder The Krusty Krab in performing the trademark function of identifying source.

Viacom's ownership of the mark is not undermined by the word mark's varying styles, fonts, and sizes on the licensed products.    Other circuits have observed that "[c]onsistent and repetitive use of a designation as an indicator of source is the hallmark of a trademark."[38]    The Krusty Krab is a word mark—not a design mark—so the focus is whether the words themselves are consistently used as an indicator of source.    While the title, font, and prominence of the mark are inconsistent, the words "Krusty Krab" are consistently used on the licensed goods and support Viacom's ownership claim.

The Krusty Krab's key role in "SpongeBob SquarePants" coupled with the consistent use of the mark on licensed products establishes ownership of the mark because of its immediate recognition as an identifier of the source for goods and services.

**IV**

While Viacom has established ownership of the mark through its use as a source identifier, Viacom must also prove that The Krusty Krab mark is

---

[37] *Kellogg*, 166 U.S.P.Q. at 282-83.

[38] *Rock & Roll Hall of Fame v. Gentile Prods.*, 134 F.3d 749, 753-56 (6th Cir. 1998) (denying trademark protection on the architectural design of the building because the design was not consistently emphasized); *see also MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342-43 (4th Cir. 2001) (holding that the phrase "Intelligence Everywhere" was not used as a mark in part because the word mark was used in "limited, sporadic, and inconsistent" ways).

distinctive in order to establish that it is legally protectable.[39]

"[A] mark can be distinctive in one of two ways."[40]  "[A] mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'"[41]  Even if a mark is not inherently distinctive, it can acquire distinctiveness "if it has developed secondary meaning."[42]  The district court held that Viacom failed to demonstrate that its mark is inherently distinctive, but that The Krusty Krab had acquired distinctiveness through secondary meaning.  Because we agree that the mark has acquired distinctiveness through secondary meaning, we pretermit consideration of whether the mark is inherently distinctive.

A mark develops secondary meaning "when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself."[43]  One commentator has explained that "[i]n determining what can qualify as a trademark, it is crucial that the designation in question perform the job of identifying and distinguishing the goods or

---

[39] *See* 15 U.S.C. § 1127 (defining trademark as a word used "to identify and distinguish his or her goods"); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) ("To be protectable, a mark must be distinctive." (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008))); *see also Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) (undertaking a distinctiveness inquiry in the analysis of a trademark infringement claim for a registered mark); *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (same); *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008) (same for an unregistered mark).

[40] *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000).

[41] *Id.* at 210 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)) (alteration in original).

[42] *Id.* at 211.

[43] *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 445 (5th Cir. 2015) (quoting *Smack Apparel Co.*, 550 F.3d at 476) (alteration in original).

services with which the symbol appears."[44]  To determine whether a mark has

acquired secondary meaning, courts consider the following seven factors:

> (1) length and manner of use of the mark or trade dress, (2) volume
> of sales, (3) amount and manner of advertising, (4) nature of use of
> the mark or trade dress in newspapers and magazines,
> (5) consumer-survey evidence, (6) direct consumer testimony, and
> (7) the defendant's intent in copying the [mark].[45]

Several "factors in combination may show that" a mark has developed

secondary meaning "even if each factor alone would not."[46]

Whether a mark has acquired secondary meaning is a question of fact.[47]

At summary judgment, this court considers whether IJR raised a fact question

as to secondary meaning—i.e. whether consumers associate The Krusty Krab

only with Viacom.[48]  Viacom's "burden of demonstrating secondary meaning 'is

substantial and requires a high degree of proof.'"[49]  Nonetheless, summary

judgment may be granted if the "record compels the conclusion that the movant

is entitled to judgment as a matter of law."[50]

The first factor—length and manner of use—supports Viacom.  The

Krusty Krab appeared in the pilot episode of "SpongeBob SquarePants"

eighteen years ago.  Over 80% of the episodes aired from 1999 through today

have included The Krusty Krab, and it is a central element of the SpongeBob

---

[44] 1 MCCARTHY § 3:1.

[45] *Test Masters*, 799 F.3d at 445 (quoting *Smack Apparel Co.*, 550 F.3d at 476) (alteration in original).

[46] *Id.* (quoting *Smack Apparel Co.*, 550 F.3d at 476).

[47] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010).

[48] *Test Masters*, 799 F.3d at 447 (stating that a court must determine whether a party "raised a dispute of fact as to whether consumers associate the mark with only its company").

[49] *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 544 (5th Cir. 2015) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005)).

[50] *See Amazing Spaces*, 608 F.3d at 234 (quoting *Smack Apparel Co.*, 550 F.3d at 474) (affirming a grant of summary judgment on acquired distinctiveness while recognizing that distinctiveness is evaluated by a preponderance of the evidence).

universe. The recurrent use of The Krusty Krab over the past eighteen years in a widely viewed television program is undisputed, as is the manner of use.

As for volume of sales, Viacom has earned millions on licensed products that display The Krusty Krab mark, and two feature films in the SpongeBob franchise—which prominently featured The Krusty Krab—grossed a combined $470 million. This court has considered the sale of items grossing $30,500 to be low volume,[51] but has affirmed a finding of secondary meaning on review of a summary judgment when sales totaled $93 million.[52]

The relevant question with regard to factor three—the amount and manner of advertising—"is not the *extent* of the promotional efforts, but their *effectiveness* in altering the meaning of [the mark] to the consuming public."[53] There have been numerous print and Internet advertisements for The Krusty Krab-licensed products, and $197 million was spent in promotional expenditures for the two "SpongeBob SquarePants" feature films. The effectiveness of this advertising is evident from the success of product sales and the films. Though the effectiveness of the advertising as to The Krusty Krab mark, specifically, has not been directly proven, its depiction in advertisements is such that the public would recognize the mark as more than an artistic backdrop.

With respect to the nature and use of the mark in media—factor four–The Krusty Krab is often referenced by the press. The mark frequently appears on the "SpongeBob SquarePants" social media platforms and is

---

[51] *Nola Spice Designs*, 783 F.3d at 544.

[52] *Smack Apparel*, 550 F.3d at 472, 478.

[53] *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983) (quoting *Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 850 (5th Cir. 1970)) (emphases in original and alteration added), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

integrated into the SpongeBob website and mobile app. This evidence supports Viacom's assertion that its word mark has acquired secondary meaning.[54]

The record does not contain consumer-survey evidence as to whether The Krusty Krab has acquired secondary meaning, but "survey evidence is not required to establish secondary meaning."[55] There is no direct consumer testimony nor any consideration of IJR's intent in the distinctiveness inquiry. Therefore, there is no evidence pertaining to factors five and six. The evidence regarding IJR's intent in copying the mark is discussed in more detail below. That evidence is inconclusive.

IJR does not dispute the underlying facts but asserts that they merely establish that the public recognizes "SpongeBob SquarePants" as a distinct source of products; according to IJR, The Krusty Krab is just a cartoon restaurant. This is not a reasonable inference from the undisputed evidence. The record clearly shows that The Krusty Krab is a focal point in the "SpongeBob SquarePants" television series and films, The Krusty Krab has continually been depicted in the advertising and promotion of the franchise over the past eighteen years, and it is used in the sale of products. The factors lead inescapably to the conclusion that in the minds of consumers, The Krusty Krab identifies the source of products, which is Viacom, the creator of the "SpongeBob SquarePants" fictional universe and its inhabitants. Viacom's mark has acquired distinctiveness through secondary meaning as a matter of law.

---

[54] *See Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 446 (5th Cir. 2015).

[55] *Nola Spice Designs*, 783 F.3d at 546.

No. 17-20334

## V

Viacom must also prove that IJR's use of The Krusty Krab creates a likelihood of confusion as to source, affiliation, or sponsorship.[56]  It has met that burden.

To establish a likelihood of confusion, Viacom must show "a probability of confusion, which is more than a mere possibility of confusion."[57]  Word association with Viacom's The Krusty Krab is insufficient to establish a probable likelihood of confusion, and the court "must 'consider the marks in the context that a customer perceives them in the marketplace.'"[58]  To assess whether use of a mark creates a likelihood of confusion as to affiliation, sponsorship, or source, this court considers the so-called "digits of confusion."[59]  The digits form a "flexible and nonexhaustive list"[60] that includes the following seven factors:

> (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion.[61]

At times, our court has listed eight factors, the additional one being "the degree of care exercised by potential purchasers."[62]  However, neither of the parties in

---

[56] *See* 15 U.S.C. § 1125(a)(1).

[57] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998).

[58] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004) (quoting *Elvis Presley*, 141 F.3d at 197).

[59] *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000)).

[60] *House of Vacuums*, 381 F.3d at 485.

[61] *Id.* at 484-85; *see also Elvis Presley*, 141 F.3d at 194; *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980).

[62] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017); *accord Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

the present case, nor the district court, has discussed that factor. In any event, "[n]o single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors."[63]

Likelihood of confusion is a question of fact.[64] However, "summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'"[65] The district court held "that all of the factors support a likelihood of confusion" and ruled in Viacom's favor. Because all inferences must be made in the non-movant's favor at summary judgment,[66] the district court erred in finding that *every* digit of confusion weighs in Viacom's favor. Nonetheless, Viacom has established that as a matter of law there is a likelihood of confusion between the two marks.

Context is critical to a likelihood-of-confusion analysis, and we "must consider the application of each digit in light of the specific circumstances of the case; otherwise, we risk inadvertently lowering the standard of confusion."[67] Because of the posture of this case, context is limited as IJR has not yet opened its restaurant. However, IJR has filed an intent-to-use trademark application for the name "The Krusty Krab" in restaurant services. It has also taken steps towards opening the restaurant such as leasing property, procuring equipment, purchasing domain names, and developing a comprehensive business plan. This court must not divine the theme and details of the restaurant, but the record contains sufficient context to conduct a likelihood-of-confusion analysis.

---

[63] *Smack Apparel*, 550 F.3d at 478.

[64] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

[65] *Id.* at 227 (quoting *Smack Apparel*, 550 F.3d at 474).

[66] *Id.* at 226.

[67] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

No. 17-20334

"The first digit, the type of mark, refers to the strength of the mark."[68] In evaluating the strength of The Krusty Krab mark, the focus is on Viacom's mark.[69] The more distinctive a mark, the stronger the mark.[70] Strong marks are entitled to more protection because there is a greater likelihood "that consumers will confuse the junior user's use with that of the senior user."[71] Viacom's mark is strong because it has acquired distinctiveness through secondary meaning.[72] Therefore the first digit weighs in favor of a likelihood of confusion.

The second digit is the similarity of the marks. Assessing the similarity of the marks "requires consideration of the marks' appearance, sound, and meaning."[73] "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association."[74] Viacom's The Krusty Krab is a word mark, and IJR's mark has identical spelling and pronunciation, including the unconventional use of K's instead of C's. While marks can share a key word and still be "stylistically and typographically distinguishable" so as to produce different commercial impressions,[75] IJR's mark is verbatim the same and there is no genuine issue

---

[68] *Smack Apparel*, 550 F.3d at 478-79.

[69] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998) ("In looking at the strength of the mark, the focus is the senior user's mark.").

[70] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 454 (5th Cir. 2017).

[71] *Elvis Presley*, 141 F.3d at 201.

[72] *See supra* Part IV; *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (holding that a mark is distinctive "if it has developed secondary meaning"); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (suggesting that factor one supports trademark protection if the mark had acquired secondary meaning).

[73] *Streamline*, 851 F.3d at 454 (quoting *Smack Apparel*, 550 F.3d at 479).

[74] *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 228).

[75] *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260-61 (5th Cir. 1980) (Domino's Pizza and Domino's Sugar).

of material fact with respect to this digit of confusion. Logos for the two marks may differ, but the words themselves are indistinguishable and would likely confuse consumers as to the source, affiliation or sponsorship of IJR's The Krusty Krab restaurant.

The third digit in the likelihood of confusion analysis is the similarity of the products or services. The more similar the products and services, the greater the likelihood of confusion.[76] Viacom's The Krusty Krab has a distinct theme as a fictional hamburger restaurant, whereas IJR has not fully developed a theme for its planned seafood restaurant. Existing context suggests that the restaurants will have little thematic overlap. For example, IJR's business plan never references SpongeBob, and IJR's sample menu serves po-boys and boiled seafood, not fast food hamburgers. While there is little evidence of thematic overlap between the restaurants, IJR nevertheless plans to open a restaurant, and given the success of SpongeBob, that indicates a likelihood of confusion.

Furthermore, "[t]he danger of affiliation or sponsorship confusion increases when the junior user's services are in a market that is one into which the senior user would naturally expand."[77] In *Conan Properties, Inc. v. Conans Pizza, Inc.*, this court recognized the logical extension of fictional characters to restaurants, explaining that "today's consumers expect [cartoon character] endorsements and act favorably toward them" in the restaurant setting.[78] Here, both marks already identify restaurants. Furthermore Viacom could naturally develop a real The Krusty Krab restaurant based on the fictional eatery, as its subsidiary did when it licensed Bubba Gump Shrimp Co., a

---

[76] *Streamline*, 851 F.3d at 454-55 (5th Cir. 2017) (quoting *Xtreme Lashes*, 576 F.3d at 229).

[77] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1998).

[78] 752 F.2d 145, 150 (5th Cir. 1985).

fictional business in the movie "Forrest Gump," to create a chain of real seafood restaurants. A reasonable jury would find that factor three favors a likelihood of confusion.

The fourth digit is the identity of retail outlets and purchasers. The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion.[79] IJR does not yet have a retail outlet or customers, but its business plan and Ramos's testimony provide context. IJR plans to open restaurants in California and Texas, and it intends to target "the general public," particularly "families, singles, and students . . . as well as the area's work force." At this general level of abstraction, Viacom also targets the general public, including residents of California and Texas. Based on this broad overlap, the district court found that factor four weighed in Viacom's favor. However, there are substantial differences in the retail outlets and the predominant purchasers that mitigate the possibility of confusion.

The retail outlets have little overlap, as Viacom presumably targets television viewers, toy stores, and online retailers, whereas IJR's services will only be available in brick-and-mortar restaurants. This court previously held that when a senior user distributes primarily through grocery stores and a junior user distributes exclusively through fast food outlets, there are basic differences in modes of distribution even if the senior user also distributes some of its product through fast food outlets.[80] Likewise, Viacom and IJR would have different retail outlets even if there were marginal overlap.

There is some overlap in purchasers—IJR targets families, two-thirds of SpongeBob viewers are children, and one-third of viewers are technically

---

[79] *Streamline*, 851 F.3d at 455 ("The smaller the overlap between the retail outlets for and the predominant consumers of [plaintiff's] and [defendant's] goods, the smaller the possibility of confusion.").

[80] *Domino's Pizza*, 615 F.2d at 262.

adults—but the core consumers of each mark are dissimilar. Purchaser identity is similar, for example, when the competing marks both target trained cosmetologists[81] or drillers of natural gas.[82] By contrast, substantial dissimilarities existed when the junior user's fast-food pizza patrons were "primarily young (85.6% under 35 years of age), single (61%) males (63.3%)," while the senior user's purchasers of sugar in grocery stores were "predominately middle-aged housewives."[83] There is no empirical data in the present case, and it is not clear how much the identity of consumers and purchasers would overlap. SpongeBob predominately targets children and young adults through mostly digital channels, whereas IJR's retail outlets would be physical restaurants. However, it is reasonable to infer that some children who are SpongeBob fans would influence their parents' or caretakers' decision to eat at a Krusty Krab restaurant, and that adult SpongeBob fans might well dine at a Krusty Krab restaurant, at least once, due to the name. But the extent of the overlap between purchasers cannot be gauged adequately on the record before us.

The fifth digit of confusion is the identity of advertising media. "The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion."[84] Ramos has testified, and IJR's business plan confirms, that IJR will advertise through traditional media such as television and print, as well as online media including social networks and "Google ads." Viacom

---

[81] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009).

[82] *See Streamline*, 851 F.3d at 455 (holding that because the equipment could eventually end up in the same customers hands, the digit of confusion moved from against likelihood of confusion to neutral).

[83] *Domino's Pizza*, 615 F.2d at 262.

[84] *Streamline*, 851 F.3d at 455 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 506 (5th Cir. 1980)) (emphasis in original).

No. 17-20334

advertises "SpongeBob SquarePants" on television—and through it The Krusty Krab mark—and it also promotes the mark online.

This court has held that when "[b]oth companies use print advertisements, direct mailings, and Internet promotion" it "supports an inference that the parties use similar advertising and marketing channels."[85] On the other hand, when one mark advertises nationally and the other mark advertises locally in a specialized manner, there are significant differences between the advertising media used.[86] Absent any existing advertising by IJR, it is difficult to assess the similarity between the campaigns. We have held that this digit was "minimally probative" when a defendant did not advertise and the record "was unable to provide much information about these ads."[87] Likewise, while there is substantial overlap in the abstract, without specific advertising content, digit five does not weigh in favor of a likelihood of confusion.

The sixth digit is the defendant's intent. "Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion."[88] If there is no evidence of intent to confuse, then this factor is neutral.[89] The relevant inquiry is whether IJR intended to derive benefits from Viacom's reputation by using The Krusty Krab mark.[90] Evidence that a defendant

---

[85] *Xtreme Lashes*, 576 F.3d at 229.

[86] *Domino's Pizza*, 615 F.2d at 262.

[87] *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 481 (5th Cir. 2008).

[88] *Streamline*, 851 F.3d at 455 (quoting *Smack Apparel*, 550 F.3d at 481).

[89] *Xtreme Lashes*, 576 F.3d at 229; *see also Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203 (5th Cir. 1998) ("If the defendant acted in good faith, then this digit of confusion becomes a nonfactor in the likelihood-of-confusion analysis, rather than weighing in favor of a likelihood of confusion."). *But cf. Streamline*, 851 F.3d at 456-57 (holding that because there was no intent to confuse, "this digit weighs against finding a likelihood of confusion").

[90] *Streamline*, 851 F.3d at 455.

intends to "pass off" its product as that of another can be found through imitation of packaging, similar distribution methods, and more.[91]

The district court acknowledged that it was "not clear" whether Ramos intended to derive benefits from Viacom's reputation. Nonetheless, it held that IJR acted in bad faith because Murillo associated the phrase The Krusty Krab with "SpongeBob SquarePants" and Ramos was aware of Viacom's use of the mark before he submitted his trademark application. Murillo's word association, without more, does not establish bad faith at summary judgment. Furthermore, while some courts would infer that Ramos's selection of a mark with knowledge of another's use is a signal of intent,[92] this court has held that, "'mere awareness' of the senior user's mark does not 'establish[] . . . bad intent.'"[93] Also, Murillo averred that he never mentioned SpongeBob during his discussions with Ramos, and IJR asserted that the original Crusted Crab name was created to reference seafood with a crust on it and that the spelling modification was a stylistic decision.

While a jury may disbelieve IJR, at the summary judgment stage there is a genuine issue of material fact as to whether IJR intended to derive benefits from Viacom's The Krusty Krab. IJR asserts that it spontaneously developed its name, and this court has held that organic creation of a mark shows lack of intent and does not support a likelihood of confusion.[94] IJR utilized only one

---

[91] *Domino's Pizza*, 615 F.2d at 263.

[92] *See, e.g.*, *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963).

[93] *Streamline*, 851 F.3d at 456 (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)) (alterations in original); *see also* 4 MCCARTHY § 23:115 (citing cases from the Second, Sixth, Seventh, Tenth, and Federal Circuits) ("'[M]ere knowledge or awareness of the senior user's mark is not the same as an intent to confuse customers.").

[94] *Streamline*, 851 F.3d at 456 (noting that when the junior use chose its name, it was unaware of the senior user's existence); *Domino's Pizza*, 615 F.2d at 263 (holding that there was no evidence of intent because even though the junior user was aware of Domino sugar, he was simply shortening the prior name of the restaurant).

element of the show—The Krusty Krab name—a name that Viacom did not register. These facts are more favorable to IJR than to the *Conans Pizza* junior user, but even when there was a "pervasive, inescapable aura of CONAN THE BARBARIAN,"[95] this court held that "sufficient doubt exists regarding whether that use was designed to capitalize on [plaintiff's] goodwill."[96] At summary judgment, this court must "disregard all evidence favorable to the moving party that the jury is not required to believe,"[97] and "construe all the evidence and reasonable inferences deduced therefrom in a light most favorable to [IJR]."[98] The district court erred in inferring bad intent, as evidence of IJR's malevolence is circumstantial. Accordingly, this digit does not support a finding of a likelihood of confusion.

The seventh digit is evidence of actual confusion. This is the "best evidence of a likelihood of confusion."[99] Even if initial consumer confusion is quickly dispelled, this initial misunderstanding is evidence of confusion.[100] "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys."[101] Viacom commissioned Dr. Blair to perform a consumer survey, and it found that 30% of respondents indicated that a restaurant named The Krusty Krab was "operated by, affiliated or connected with, or approved or sponsored by Viacom" and that 35% of respondents associated such a restaurant with Viacom. There is also anecdotal evidence of

---

[95] *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985).

[96] *Id.* at 151.

[97] *Moore v. Willis Indep. Sch. Dist*, 233 F.3d 871, 874 (5th Cir. 2000).

[98] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (quoting *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1260 (5th Cir. 1991)).

[99] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203-04 (5th Cir. 1998) (quoting *Domino's Pizza*, 615 F.2d at 263).

[100] *Id.* at 204.

[101] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) (citations omitted).

confusion: Ivan Murillo admitted that The Krusty Krab calls to mind "SpongeBob SquarePants," and an IJR investor mentioned SpongeBob "out of the blue" while discussing the restaurant.

The district court admitted Dr. Blair's report over IJR's objections—which this court reviews for abuse of discretion[102]—and held that the survey results were "sufficient" to weigh in favor of a likelihood of confusion. Consumer surveys may evidence confusion at levels less than 30%.[103] However, when survey results are "substantially defective," confusion levels of 57% and 71% are insufficient to evidence actual confusion.[104]  Therefore, we must consider whether Dr. Blair's survey was substantially defective.

"Usually, methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility."[105]  However, "a survey can be 'so badly flawed that it cannot be used to demonstrate . . . the likelihood of consumer confusion.'"[106]  This court has concluded that when participants were non-representative and questioning procedures were improper, the surveys were so seriously flawed that no reasonable jury could consider them as evidence of confusion.[107]  This case presents no such representativeness

---

[102] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998) (en banc) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

[103] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 507 (5th Cir. 1980) (finding that 15% and 23% levels of confusion are "strong evidence indicating a likelihood of confusion").

[104]  *Domino's Pizza*, 615 F.2d at 263 (dismissing a survey that found that 71% percent of participants thought that a company named Domino's Pizza, if it made other products, would make sugar); *see House of Vacuums*, 381 F.3d at 488 (dismissing a survey in which 57% of participants said they assumed an affiliation or association between the two marks).

[105] *House of Vacuums*, 381 F.3d at 488.

[106] *Id.* at 488 (quoting *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984)).

[107] *See id.* at 487-88 (concluding the survey was flawed because it suggested a connection between the marks and it only surveyed purchasers of the plaintiff's product bearing the mark); *Domino's Pizza*, 615 F.2d at 264 (asking overly open-ended questions such

concerns.  However, parts of the survey resembled a word-association test.  Dr. Blair utilized the widely accepted *Eveready* format when conducting his survey.[108]  But the survey asked if "THE KRUSTY KRAB restaurant [is] affiliated or connected with any other company or organization."  This invites word association, and "a mere word-association test is entitled to little weight."[109]  Yet these methodological flaws affect only the weight the survey should receive; they do not rise to the level of a substantial defect, and the district court did not abuse its discretion in admitting Dr. Blair's report.

This court has "set a low bar . . . stating that a plaintiff need provide 'very little proof of actual confusion . . . to prove likelihood of confusion.'"[110]  Construing all evidence in IJR's favor, Blair's survey has probative value and there is anecdotal evidence of actual confusion.  We therefore conclude that this digit weighs in favor of a likelihood of confusion.

The record shows that there is no genuine issue of material fact as to likelihood of confusion.  The digits of confusion—particularly the strength of Viacom's mark, the identical spelling and pronunciation of the marks, both marks' identification of restaurants, and evidence of actual confusion—dictate that IJR's use of the mark infringes on Viacom's trademark.  By creating a connection in the consumer's mind between IJR's restaurant-in-development

---

as whether Domino's Pizza brought anything else to mind and surveying only the demographic that purchased the plaintiff's products bearing the mark).

[108] 6 MCCARTHY § 32:174 (noting that the format accepted in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976) has "become a standard and widely accepted format to prove the likelihood or non-likelihood of confusion").

[109] *Domino's Pizza*, 615 F.2d at 264 (quoting *Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 448 (5th Cir. 1973)); *see also* 4 MCCARTHY § 23:9 ("'Confusion' means more than that the junior user's mark merely 'calls to mind' the senior user's mark.").

[110] *Streamline Prod. Sys. Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017) (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009)).

and The Krusty Krab from "SpongeBob SquarePants," there is an impermissible likelihood of confusion as to source, affiliation, or sponsorship.

While this holding does not grant trademark protection to Viacom in every context, third parties cannot appropriate the goodwill and reputation of The Krusty Krab by naming a restaurant The Krusty Krab absent a showing that the restaurant was developed in a context sufficient to avoid any likelihood of consumer confusion. This case squarely falls within the protection of the Lanham Act and consumers would affiliate Viacom's legally protectable The Krusty Krab mark with IJR's seafood restaurant by the same name.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.