# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2025

Lyle W. Cayce
Clerk

———————

No. 24-30111

———————

Rampart Resources, Incorporated,

*Plaintiff—Appellant*,

*versus*

Rampart/Wurth Holding, Incorporated,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-6895

———————————————————

Before Dennis, Southwick, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

This appeal concerns the denial of a preliminary injunction in a trademark infringement case. For the reasons that follow, we AFFIRM.

I

On the one hand, Plaintiff-Appellant Rampart Resources, Inc. (Rampart Resources) provides real estate and property management services in Louisiana, Texas, Arkansas, Mississippi, Alabama, West Virginia, and

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30111

Ohio. Rampart Resources offers services pertaining to right-of-way acquisition, servitudes, real estate brokerage, permitting, and property management—across several industries, including utilities, oil and gas, renewable energy, and public works. In 2018, the U.S. Patent and Trademark Office (USPTO) granted Rampart Resources a federally registered trademark consisting of "the stylized wording 'RAMPART RESOURCES' to the right of a graphic image of a road going into the horizon, with a road curving off to the right and left of the main road."



To be clear, Rampart Resources does not have a trademark for the word "Rampart" or "Rampart Resources." Rampart Resources first used its mark in commerce in 1989 and has maintained the mark since the USPTO issued it.

On the other hand, Defendant-Appellee Rampart/Wurth Holding, Inc. (Rampart/Wurth) offers commercial and residential property management services throughout Louisiana, Texas, Mississippi, and Alabama. Rampart/Wurth provides services for multifamily, single-family, office, retail, and receiver/keeper properties alongside the real estate brokerage company Latter & Blum, Inc. From 1989 to 2023, Rampart/Wurth operated as "Latter & Blum Property Management, Inc.," but changed its name to Rampart/Wurth Holding, Inc. in March 2023 to distinguish itself from Latter & Blum, Inc. Relevant to this appeal, Rampart/Wurth uses one logo to refer to Rampart Multifamily Management, and another to refer to Rampart Commercial Management.

2

No. 24-30111

RAMPART MULTIFAMILY
MANAGEMENT Logo:

RAMPART COMMERCIAL
MANAGEMENT Logo:



Rampart Resources became aware of Rampart/Wurth's name change in September 2023 when a FedEx driver told Allan Butler, the President of Rampart Resources, that "another Rampart" had just opened in Baton Rouge. The FedEx driver reported to Butler that she had confused the two businesses. Butler then began investigating to determine if anyone else had been confused by Rampart/Wurth's name change. Butler discovered that Rampart Resources had received at least seven telephone calls in September and October 2023 from individuals inquiring about rent collection, leasing units, Section 8 housing vouchers, lease payments, and refunding deposits. After being told they must have the wrong number, customers responded, "this is the home office of Rampart, correct?" and "this is the number I got for Rampart."

Rampart Resources filed suit alleging that Rampart/Wurth infringed its federally registered trademark in violation of the Lanham Act.[1] Rampart Resources also filed a motion for a preliminary injunction. After a hearing, the district court denied the motion, concluding that Rampart Resources failed to show a substantial likelihood of success on the merits. Rampart Resources timely appealed.

---

[1] To the extent Rampart Resources argues that it was error for the district court to deny injunctive relief on its unfair competition, false designation of origin, and false advertising claims, we hold that those arguments rise and fall with the determination of likelihood of success on the trademark claim. We say nothing else on those claims.

## II

We review the denial of a motion for a preliminary injunction for abuse of discretion. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 288 (5th Cir. 2020). "Only under extraordinary circumstances will we reverse the denial of a preliminary injunction." *Anderson v. Jackson*, 556 F.3d 351, 355–56 (5th Cir. 2009) (cleaned up).

"As to each element of the district court's preliminary-injunction analysis . . . the district court's findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to broad review and will be reversed if incorrect." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 267 (5th Cir. 2012) (cleaned up). "[T]he preliminary-injunction factor at issue—likelihood of confusion—'is a question of fact reviewed for clear error.'" *Future Proof Brands*, 982 F.3d at 288 (citation omitted). Under our clear error standard of review, we must uphold factual findings that "are plausible in light of the record as a whole." *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017) (per curiam).

## III

In order to obtain a preliminary injunction, Rampart Resources must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that [its] substantial injury outweighed the threatened harm to the party whom [it] sought to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest." *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). Because Rampart Resources must clearly carry the burden of persuasion on all four elements, *id.*, and it fails to show a substantial likelihood of success on the merits, we do not address the other three elements.

No. 24-30111

The Lanham Act "was designed to protect both consumers' confidence in the quality and source of goods and services and protect businesses' goodwill in their products by creating a federal right of action for trademark infringement." *Peaches Ent. Corp. v. Ent. Repertoire Assocs., Inc.*, 62 F.3d 690, 692 (5th Cir. 1995). To show it is substantially likely to prevail on its claim of trademark infringement under the Lanham Act, Rampart Resources must show that (1) it possesses a valid trademark that is legally protectable and (2) that Rampart/Wurth's use of its trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015). It is undisputed that Rampart Resources owns the mark. The main issue on appeal is whether Rampart/Wurth's use of its trademark creates a likelihood of confusion.

Courts consider eight factors to determine the likelihood of confusion for a trademark-infringement claim: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." Courts also consider (8) the degree of care exercised by potential purchasers." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).[2]

The district court concluded that the first, third and seventh digits weighed in favor of granting the preliminary injunction; the second, fourth, and eighth digits weighed against; and the fifth and sixth digits were neutral. On appeal, Rampart Resources argues the district court erred in evaluating

---

[2] We refer to these eight factors as the "digits of confusion." *Viacom Int'l v. IJR Cap. Invests., L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018).

the first, second, third, fifth, and seventh digits.[3] It also contends that, absent error on each individual digits, that the district court erred in weighing the digits. We examine each challenged digit individually.

A

Rampart Resources contends that the district court erred in determining that the first digit—"the type of mark allegedly infringed"—only weighed in favor of the injunction slightly. In its view, this digit should weigh in its favor heavily.

The type of mark digit refers to the strength of the senior mark—that is, the mark that was used first in time. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998). "Stronger marks are entitled to greater protection." *Xtreme Lashes v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). To determine the overall strength of a mark, we examine two factors: (1) "where the mark falls on a spectrum" of distinctiveness, and (2) "the standing of the mark in the marketplace." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008). After evaluating where the mark falls on the spectrum, the court must evaluate its standing in the marketplace by looking at evidence such as other third-party uses in the market. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259–60 (5th Cir. 1980). "[T]hird-party single and multi-word uses" of a mark tends to show weakness, even if the defendant is only using a portion of the plaintiff's mark. *Future Proof Brands*, 982 F.3d at 293.

---

[3] Neither party challenges the district court's finding that digit six, Rampart/Wurth's intent, was neutral. Rampart Resources also explicitly states that the district court's findings as to digits four and eight were not an abuse of discretion. Any argument Rampart Resources makes about the significant weight the district court afforded these two digits is not supported by the record.

First, neither party disputes the district court's finding that the mark is arbitrary on the spectrum of distinctiveness. Rampart Resources only challenges the district court's assessment of the second factor—the mark's standing in the marketplace. When evaluating the overall standing of the mark in the marketplace, the district court specifically noted Rampart Resources' arguments about the length of time that it has used its mark, thirty-four years, the reputation it has built in the industry, and its promotion through "sponsorship of prominent charity and other events, targeted advertising, use of branded items such as shirts, jackets, coozies[], cups, and tents, banners, signage at its office locations, marketing materials such as fliers and folders, and at times, print advertising." Nevertheless, the district court ultimately concluded that Rampart Resources was unable "to counteract [Rampart/Wurth's] evidence of widespread usage of the key portion of [Rampart Resources'] mark." We hold that the district court's finding that the strength of the arbitrary trademark balanced with widespread third-party usage meant this digit weighed in Rampart Resources' favor, although not heavily so, is certainly "plausible in light of the record as a whole." *Moore*, 868 F.3d at 403.

B

Rampart Resources challenges the district court's finding that the second digit weighed in favor of Rampart/Wurth because "the similarity between the marks is not substantial." Our cases do not support this contention. Assessing the similarity of the competing marks "requires consideration of the marks' appearance, sound, and meaning." *Smack Apparel*, 550 F.3d at 479. "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Amstar Corp.*, 615 F.2d at 260–61 (quoting Rest. of Torts § 729, cmt. b (1938)). It is visually apparent that all aspects of the marks (font, color, design, etc.) are different except the use of the singular word

"Rampart." The common use of the word "Rampart" does not make the marks similar when considering "the total effect of designation." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 622 (5th Cir. 2023) (quoting *Xtreme Lashes*, 576 F.3d at 228); *see also Sun Banks of Fla., Inc. v. Sun Fed. Sav. and Loan Ass'n*, 651 F.2d 311, 317–18 (5th Cir. 1981) (finding no "immediate connection" between two marks which both used the word Sun "in light of such common use of the word 'Sun' by Florida businesses"). We conclude that the district court's finding on this digit was not clear error.

C

On the third digit—the similarity of the services provided—the district court found that there was "only a minor overlap in the services provided by the parties." As such, it found that this digit only weighed somewhat in favor of Rampart Resources. On appeal, Rampart Resources argues this was an abuse of discretion because this digit should have weighed in its favor heavily.

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)). If the services are in noncompeting industries, "the confusion at issue is one of sponsorship, affiliation, or connection." *Elvis Presley Enters.*, 141 F.3d at 202.

The district court correctly concluded that while both parties operate broadly in the real estate industry, there is not substantial overlap between the services offered. *See Rex Real Est. I*, 80 F.4th at 622 (finding that two real estate brokerage services did not offer the same services where the plaintiff mostly sold commercial listings while the defendant sold primarily residential listings). However, regardless of whether Rampart/Wurth directly competes with Rampart Resources, "the confusion at issue is one of sponsorship,

affiliation, or connection." *Elvis Presley Enters.*, 141 F.3d at 202. The critical question on this digit is "whether the consuming public would believe that the natural tendency of [Rampart Resources]" would be "to expand into the [property management industry]." *Rex Real Est. I*, 80 F.4th at 622–23. Here, the district court found that it would be reasonable for a customer of Rampart Resources to believe it was making a foray into property management, since they have offered property management services in the past and represent that they are still capable of doing so. Because of this possibility, the district court found that this digit weighed in favor of a likelihood of confusion, but only somewhat, not heavily, which is plausible based on the record. We conclude that the district court did not abuse its broad discretion in making this finding.

D

"Rampart Resources takes no issue with the law applied by the District Court, or the facts found by the District Court," on the fifth digit— advertising media identity— but challenges the district court's ultimate conclusion that the digit was neutral.

Both parties stated that word of mouth advertising is perhaps their strongest form of advertising. Rampart Resources stated in its complaint, however, that it advertised through its website, "sponsorship of prominent charity and other events, targeted advertising, use of branded items such as shirts, jackets, coozies, cups, and tents, banners, signage at its office locations, marketing materials such as fliers and folders, and at times, print advertising." Rampart/Wurth also averred that "it maintains an active online advertising presence through its website." Although both parties represented they use face-to-face communications and website advertising, the district court is correct that the evidence presented for this digit is scant. The district court surveyed the evidence before it, articulated its analysis,

and found that there was insufficient evidence to render this digit probative. We ultimately conclude that the district court did not abuse its discretion in deciding that this digit was neutral.

E

Rampart Resources also contends that the district court erred in determining that the seventh digit—actual confusion—only weighed in its favor slightly. It asserts that "proper analysis of this digit requires that it weigh heavily in favor of granting a preliminary injunction."

"Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Smack Apparel*, 550 F.3d at 483 (citing *Elvis Presley Enters.*, 141 F.3d at 204). A plaintiff may show actual confusion using anecdotal instances of consumer confusion, consumer surveys, or both. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (5th Cir. 2004). While swayed purchases are not necessary, "more is required when the confusion did not or cannot sway purchases." *Rex Real Est. I*, 80 F.4th at 625. Essentially, "not all confusion counts: evidence of actual confusion must show 'more than a fleeting mix-up of names'; rather it must show that '[t]he confusion was caused by the trademarks employed and it swayed consumer purchases.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017) (quoting *Xtreme Lashes*, 576 F.3d at 230).

The district court weighed the eight instances of confusion—seven misdirected phone calls and the FedEx driver's confusion—against the high volume of business conducted by the parties and the fact that there was no evidence that any of Rampart Resources' customers had erroneously contacted Rampart/Wurth. It found that some evidence of actual confusion was presented, but that it was not particularly weighty.

No. 24-30111

We agree. Rampart Resources offers no evidence that any of its customers were confused or swayed into doing business with Rampart/Wurth. Most importantly, there is no evidence that any of the eight incidents of actual confusion were related to Rampart/Wurth's logo or conduct. None of Rampart Resources' anecdotal evidence shows that parties were confused by the trademarks at issue in this case. Rampart Resources does not have a trademark on the word "Rampart." Our court has rejected strictly anecdotal evidence where "the proponent did not show that 'a misleading representation by [the defendant], as opposed to some other source, caused a likelihood of confusion.'" *Streamline Prod. Sys.*, 851 F.3d at 457 (quoting *Scott Fetzer Co.*, 381 F.3d at 487). In sum, all evidence proffered by Rampart Resources shows a "fleeting mix-up of names," and does not show that any party was "actual[ly] confus[ed] about the origin of the parties' products." *Xtreme Lashes*, 576 F.3d at 230. Because Rampart Resources had *some* evidence of actual confusion, however, the district court found that this digit slightly weighed in favor of Rampart Resources. We cannot hold that this was an abuse of discretion.

F

Finally, Rampart Resources argues the district court erred in weighing the digits of confusion. "Because a finding of a likelihood of confusion 'need not be supported by a majority' of the digits and each digit 'may weigh differently from case to case,' we review the court's ultimate conclusion about likelihood of success for clear error." *Future Proof Brands*, 982 F.3d at 298 (citing *Streamline Prod.*, 851 F.3d at 453). As discussed above, we find no clear error in the district court's analysis and affirm each of the district court's findings on the individual digits. As the district court noted, "[t]he digits point in several different directions—some in favor of a likelihood of confusion, some against, and others neutral. Specifically, three digits slightly weigh in [Rampart Resources'] favor (1, 3, and 7), three weigh in favor of the

No. 24-30111

[Rampart/Wurth] (2, 4, and 8), and two are neutral (5 and 6)." "Of the two digits which the Fifth Circuit has said have 'special importance'—the sixth and the seventh—one is neutral and the other weighs only slightly in favor of [Rampart Resources]." Ultimately, in weighing the digits of confusion, the district court found that the dissimilarity of the marks, as well as the sophistication of the clients weighed against a finding of likelihood of confusion. Given that each digit "may weigh differently from case to case," *Streamline Prod. Sys.*, 851 F.3d at 453 (cleaned up), we cannot say the district court's conclusion was clear error.

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.